## Leisenring *against* Black.

5 w 303
173   99

5 W   303
29 SC 211

An attorney at law, conducting the sale of real estate upon an execution, cannot purchase the land for his own benefit to the prejudice of his client, for a less sum than the amount of the claim upon which it was being sold. And if there be two plaintiffs in the execution, he can not purchase for the benefit of one, without the consent of the other, for a less sum than the whole amount of the claim. If he do so purchase, and the sheriff make a deed to one of the plaintiffs under such circumstances, there is a resulting trust for both.

ERROR to the common pleas of *Northumberland* county.

This was an action of ejectment for two lots in the town of Sunbury, by Gideon Leisenring against Jane Black.

In this case Jane Black, the defendant, and her brother William C. Black, had an unsatisfied judgment, of upwards of two thousand dollars, against their father James Black. Samuel J. Packer, Esq., was their attorney, employed to obtain execution of the judgment, and to collect the amount due thereon, so far as practicable. The lots of ground in controversy, eight in number, lying in the town of Sunbury, were levied on under the judgment and sold by the sheriff. Mr Parker, the attorney for the plaintiffs in the judgment, attended the sheriff's sale of the lots, bid for them and they were severally struck down on his bids, at prices amounting in the aggregate to two hundred and six dollars. He directed the sheriff to return the lots sold to the defendant, one of the plaintiffs in the execution, which was done accordingly. It did not appear that James Black had any other property by means of which any thing more could be obtained on the judgment; on the contrary, it was said he had not. Neither did it appear that Jane Black paid any money on the purchase of the lots. The matter was arranged with the sheriff by Mr Parker, the attorney for the plaintiffs in the judgment; and the deeds made by the sheriff, conveying the lots to the defendant, were delivered by the sheriff to Mr Parker, upon his giving a receipt for them, and agreeing that the amount of the sales, two hundred and six dollars, should be settled with the judgment creditors of James Black, and the fees paid the sheriff. The defendant and her brother William C. Black were, at that time, the only judgment creditors of their father; and they, therefore, are the persons referred

to in Mr Parker's receipt, with whom the purchase money was to be settled. It did not appear that the defendant ever settled with her brother for his proportion of the purchase money of the lots, or that they ever had any settlement respecting the money made on the judgment; or that the brother in his lifetime ever claimed or disclaimed having an interest in the purchase of the lots at the sheriff's sale. He died in April 1831, about three months or a little more, after the sheriff delivered the deeds to Mr Parker.

Upon these facts the court below were of opinion that the plaintiff was not entitled to recover, and so instructed the jury, who found accordingly.

*Donnel*, for plaintiff in error, contended that there was a resulting trust of the plaintiff; and cited Van Horn *v.* Fonda, 5 *John's Chan.* 407; *Story on Eq.* 318; *Fond. Eq.* 395.

*Greenough*, for defendant in error, cited *Cornish on Uses* 30; 3 *Law Lib.* 30; 2 *Atk.* 171; 2 *Mad. Chan.* 113.

The opinion of the Court was delivered by

KENNEDY, J.—If the attorney had directed the lots on his bids to have been returned by the sheriff as sold to himself, and the sheriff had accordingly done so, and had made and delivered the deeds of conveyance therefor to him, upon his undertaking to settle the amount of the purchase money with his clients, it could scarcely admit of a question, that the plaintiffs in the judgment would have had a right to have claimed that his purchase was made in trust for them. The attorney in such case being employed by his clients to collect the amount of the judgment and to do the best he can for them in this respect, it is altogether incompatible with those motives of action which ought to govern him, and which alone are suited to secure a faithful discharge of the trust, to permit him to become the purchaser of the property for his own benefit, unless it be for a sum sufficient to cover the whole amount of his clients' demand. To permit him to buy for his own use for a less sum, without the consent of his clients, would be enabling him to make a gain or profit by sacrificing their interests; because the lower the price for which he should purchase the property, the greater his advantage in doing so; such a principle, therefore, is not to be tolerated. And indeed no rule seems to be better settled, than that whenever confidence is reposed in a person, who, from his being placed in such situation, has it in his power to gain an advantage, without the certainty of discovery, by sacrificing the interests of those he is bound to protect, he shall not be suffered to enjoy it except by their consent, and not even then unless they be competent to part with their right to protection in this respect. Neither is this rule to be understood as applicable only where it is shown that some advantage has been actually gained by the party acting in the character of an agent or trustee, by making a purchase in his own

name, in order to give those alone whose interest he was bound to consult and promote, the benefit of the purchase. It would in many cases be of little avail, if it were so; it arises from the nature of the relation between the parties, and is alike applicable, however honest and fair the purchase may be; and it is not necessary to inquire whether the purchase is an advantageous one or not: because, the fact may be so, and yet not susceptible of being distinctly and clearly proved at the time; or there may even be fraud in it, and the party against whom it has been committed, not able to prove it. The rule therefore is founded in principles of public policy; and with a view to protect the interests of those for whom the party has undertaken to act, all temptation to do any thing in opposition thereto, is removed, by giving them the right of claiming the benefit of the purchase. And there is perhaps no relation, in which the confidence is greater between the parties than that of attorney and client, and where the influence over the mind and interests of the client is greater than that possessed by his attorney. The most implicit confidence is reposed in the integrity, skill, and discretion of the latter, and that all these will be exerted to the utmost of his ability, so far as may be necessary, to accomplish the end for which he is retained. And although the sheriff is the agent of the law in making sales of property taken in execution, and in doing so, may very properly be considered as acting under the authority thereof, yet the attorney of the party, at whose suit the property is about to be sold, has a control in regard to it, that may in many instances be exercised either to the advantage or prejudice of his clients as he pleases. It may be advisable, for instance, on the part of the attorney, after the property has been advertised for sale, or after it has been exposed to sale, for some good reason, to postpone or countermand the sale, in order to obtain a better price and make the amount of his client's claim, by offering it for sale at a future time; or he seeing, at the time first appointed for the sale, that the property was likely to be sold for a price greatly below its real value and the amount of his client's debt, might, instead of countermanding it, urge the sheriff to go on and make the sale, and he become the buyer himself for his own use; but if his clients have the right to claim the benefit of such purchase, the attorney will not be likely to permit the sheriff to sell under circumstances that might prove injurious to their interests.

If the attorney then cannot become a purchaser of the property for his own use at a price or prices insufficient to pay the amount of his client's judgment, because inconsistent with those principles and motives upon which he is required to act in order to ensure a faithful discharge of his duty towards his clients, is it not equally apparent that where he has undertaken to act as the attorney of two in a matter where they are jointly concerned, as in this case, and to do the best he can for the common benefit of both, that he cannot, consistently with the duty he owes to them, become the agent

of one exclusively without the knowledge or consent of the other, and purchase the property for him at the sheriff's sale, upon the most favourable terms or lowest prices that it can be had. To permit the attorney to serve and promote the wishes of the one in this respect, may very readily tend to prejudice the interest of the other, and therefore ought not to be sanctioned. In short he ought not to assume any agency for one, that might tend to excite a feeling on his part, which would conflict in the slightest degree with the faithful discharge of the duty which he owes to the other. But his undertaking to buy the property for one, may incline him to wish to get it at reduced prices, while his paramount duty to the other, requires that he should do all he can to make it bring its full value, in order to satisfy the judgment. It would therefore seem to be just and equitable, as well as agreeable to the dictates of sound policy, that the other plaintiff should have the right at his option to claim a joint and equal interest in the purchase. Let us suppose that one, of two plaintiffs in a judgment, should undertake by agreement with his partner, of which agreement his action and interference in the matter might be sufficient evidence, without any direct proof of it, to collect the amount, would it be considered consistent with a faithful discharge of such agreement, for him, having a control over the sheriff, so far at least, as to countermand the sale at one time and to renew the order for it at another, when all the property of their debtor was levied on and about to be sold under this judgment, to buy it at reduced prices, leaving more than one half the amount of their judgment still unsatisfied, and having by a resale afterwards made the whole amount of the judgment out of the property, to refuse to account to his partner for more than one half the aggregate bidden by him at the sheriff's sale, under the plea that he had bought exclusively for his own use? It appears to me that it would not be in good keeping with his agreement, and that it would be a direct violation of the doctrine and rule stated above, which prevails in and regulates all cases of trust or confidence. In such case the acting plaintiff must be considered as acting for the benefit of both, and when the property is purchased for the purpose of securing the debt, or as much of it as possible, it is nothing but just and equitable that it should be held and taken to have been bought in trust for the use of both. Under this view we think that the purchase of the lots in question must be deemed to have been made in trust for both the plaintiffs in the judgment, there appearing to have been no consent either express or implied on the part of William C. Black, that it should be made exclusively for the defendant here. Besides, it would rather seem that the lots were bought with the joint funds of the two, which would of itself alone be sufficient to create a resulting trust in favour of William C. Black. This is a fair inference, because it does not appear that the defendant ever accounted to him in any way for his half of the purchase-money or prices bidden for the property at the sheriff's

[Leisenring v. Black.]

sales. If, however, the fact be, that William C. Black and the defendant were partners in tràde, and the judgment against James Black, was for a partnership debt, and upon settlement of the partnership accounts, the whole amount of this debt should be found to be absorbed in payment of or wanting to pay partnership debts, then the interest of William C. Black in the property may amount to nothing; for if he were living, he could only claim for his exclusive use one-half, or whatever his proportion, according to the terms of the partnership agreement might be, of the surplus of the partnership stock or property, remaining after the payment of all debts and claims existing against it. The defendant being the surviving partner, has, therefore, a claim or lien on the property for the purpose of paying such debts and claims, if not already satisfied, and of the partnership funds; and the separate creditors of William C. Black could therefore only levy on and sell such separate and exclusive right as should remain after payment of the partnership claims; whatever that may be, the purchaser at sheriff's sale will ultimately be entitled to hold it. And in the mean time he is entitled to recover the possession of an undivided moiety of the lots, and to hold it until it shall be made to appear, as has been suggested, by a settlement with the personal representatives of William C. Black, that it will be required for the payment of the partnership debts, or the reimbursement of the defendant, if she shall have paid to that amount out of her separate funds. We therefore think that the court below erred in advising the jury as they did, that from the evidence the plaintiff was not entitled to recover, and that their verdict ought to be in favour of the defendant.

Judgment reversed, and a *venire de novo* awarded.