Lane, C. J.
The ground upon which the defendant claims the right to withdraw his offer to relinquish his title to the land is because, he says, that offer was made to the company, but that he has *52 discovered Wade claims the title as his own, and not for the benefit of the company. Much of the argument is devoted to the examination of the proofs bearing on this point. It will, be unnecessary for us to notice this, because, in our opinion, the case will be decided upon principles, among which this loses its character and importance.
Pursuing the facts in the order of their occurrence, the first proposition to be considered is, whether the attorney or solicitor can purchase, at a sale under the execution which his client is seeking to enforce; as between him and the debtor, as between him and third persons, such sale is without objection, but it is another question between him and his client, when the law creates confidential relations. The attorney is retained for the purpose of doing all in his power to advance *the client’s interests, and, especially, that the property should produce enough, by sale, to pay the whole debt. For this purpose, although not the agent of the law in making sales, he has a large control as to the management of the execution, Without adverting to other means of influence, he can select his time to set the machinery of the law in motion, and he can countermand or postpone it for the purpose of obtaining for his client a better price. But if he were permitted to purchase, it would be his interest to buy at the least price; his personal interest, therefore, would be adverse to that of his client; especially if the property did not produce enough to pay the whole debt. Ho would be enabled to gain by sacrificing his client’s interest, and the lower the price, the greater would be his advantage, and the greater his client’s loss. To prevent this collision of interests, to destroy the temptation of abusing opportunities for obtaining personal advantages, at the expense of confidential obligations, by sacrificing interests which he is bound to protect, the law imposes upon those who stand in fiduciary relations the disability of acquiring interests inconsistent with such relation. It does not inquire whether the act was honest or advantageous, but gives the protected party all advantage of the act done. This doctrine is universally applicable to trustees, executors, agents, and it nowhere is of more forcible application than to an attorney purchasing under an execution, where the whole j debt is not paid. 8 Ohio, 552; 9 Ohio, 117; 5 Watts, 303.
The case, then, is one in which, although Pettibone acted in entire good faith, his client may step in and claim the benefit of his *53 purchase, unless it was made with their assent. He claims that assent may be inferred, after they did not answer the letter in which he communicated information about the sale, and asked their instructions. We do not intend to determine whether such assent can be presumed from this omission. And it is of no consequence in the present case, because, by his letter of the 29th of November, he cheerfully relinquished all benefit of the purchase to the company. This *act was a recognition of his confidential relations; and it authorized the company or Wade, their trustee (whom, on this examination, we at present regard as identical with the company), to demand of Pettibone to hold his rights for their benefit, and to be substituted in his place. Negotiations were then opened between the parties for the sale of the land, which continued until April, 1837, when Wade signified his intention to be in Delaware, to mature the arrangement, during the ensuing month. Up to this time the rights of the parties were clear; and had an application been then made, we should have found no difficulty of entertaining a suit to give the title to the plaintiff.
But, before Wade, or the company, could claim the benefit of this purchase, it is plain they must-absolve Pettibone from his responsibilities and pay the expenses of acquiring the title. Pettibone had a claim for his own fees. He was responsible to the master for the expenses of the sale, and he stood liable to the master for the immediate adjustment of the purchase money, for, although Wade might elect to assume the purchase, it is not clear that Pettibone could, even then, compel them to take it, and certainly not without litigation, in which the master ought not to be involved. In this stage of the case, Pettibone had a right to expect of the plaintiff an early close of the affair.
Instead of this, not a step was taken, or a movement made, toward the completion of the purchase,'from April, 1837, to June, 1839. During this period of twenty-five months, no effort was made, either to pay to Pettibone his just claim; or to release him irom his responsibilities to the master. And if we may trust the answer, when, in the spring of 1839, the master had exacted, from Pettibone, security for the prompt payment of the purchase money-, and when Pettibone visited Cincinnati, in June, 1839, on this errand, but the plaintiff could not be found. He, therefore, paid the money over to the company.
*54 The phase, therefore, which the case assumes, is not as to the existence of the original right, but whether it has not been *lost by delay. This long slumber, this unaccountable and inexcusable neglect of duties, seems, to the court, a sufficient answer to a plaintiff who is seeking, in chancery, to assert rights.
Bill dismissed.