# Drysdale's Appeal.

1. An administrator who has had real estate purchased in for him, when sold on a judgment entered at his instance on a bond in favor of his intestate, and who advances only the costs of the proceeding, the purchase-money being credited on the judgment, is chargeable with a proportion of the amount of the re-sale by him of the premises, in favor of such of the heirs of the intestate as have not confirmed his purchase.

2. The administrator is not entitled to commissions on such re-sale as against the heirs from whom the proceedings were concealed: he is however entitled to credit for a reasonable fee paid to the counsel who conducted the proceeding on the judgment.

3. Though an auditor appointed by the court to audit and settle an administration account also reported a *distribution* of the fund, which part of the report was set aside, the court may decree distribution on the facts reported by him.

4. In the distribution of an intestate father's estate, the statute of limitations may be interposed by the children to claims on simple contract, which were due by them to their father.

5. Where an individual conveys his interest in land to a trustee for payment of certain creditors, and the balance to his wife: *Held*, that after the lapse of more than twenty-two years the law will presume the debts to have been paid and the trust executed, so far as respects the creditors.

[Drysdale's Appeal.]

APPEAL from the decree of the Orphan's Court of *Philadelphia county*, by William Drysdale.

Alexander Turnbull, senior, was the owner of eleven tracts of unseated land in Luzerne county, Pennsylvania, upon which, in May, 1826, he went to reside. He had little personal property, and at the time of his death in July, 1826, he had no money. He died intestate. He left a widow and four children, viz. James, Alexander, Margaret, and Jane the wife of William Drysdale, the appellant. James and Alexander had been in partnership in Philadelphia as grocers, and in the spring of 1823, were insolvent. Their father had incurred responsibilities and paid debts for them before that time, and they had executed to him a bond with authority to confess judgment, conditioned for the payment of $4000 in ten days from the date thereof. The son-in-law, William Drysdale, had taken the widow and unmarried daughter to live with him free of charge, and the widow died there in 1832.

, Before the proceedings hereafter referred to were had upon the said bond, Drysdale, the administrator, had filed an administration account on the estate of the said deceased. The balance claimed on its face to be due to the accountant, was $77.15.

On the 22d February, 1827, judgment was entered on the bond aforesaid, by virtue of the warrant of attorney, in the Common Pleas of Luzerne county, and in August, 1827, the interest of James and Alexander Turnbull, the defendants, in the eleven tracts of land, was sold by the sheriff by execution on the judgment, to the counsel of Drysdale, for twenty-five dollars for each tract. The whole amount of the purchase appears to have been computed at $250, no part of which was paid in money, except the costs, $41.71; for the remaining $208.39, the counsel, as the attorney of plaintiff, subscribed a receipt, as for so much on account of the debt. On the 14th April, 1828, the sheriff executed a deed to the attorney, who, by deed endorsed on the sheriff's deed, conveyed the premises to Drysdale in fee, Drysdale paying him a fee of $40. The consideration expressed in the deed was $290, but the administrator appears to have paid no more than the amount charged for costs and the fee to the counsel. The deed from the counsel to Drysdale was put on record.

At this time, the land was not known to contain *coal*. The discovery was afterwards made, and by deed dated August 24th, 1835, Drysdale and wife and her sister Margaret conveyed the whole of five of the eleven tracts to Dr. Moore in fee. The consideration expressed in this deed, and receipted for at the foot of it, was $26,320. The accountant never settled any formal account with Margaret Turnbull, but she stated before the auditor that she had received $3000 in money and her share of a mortgage of the purchaser of the land.

In August, 1826, before the sheriff's sale aforesaid, *James Turn-*

*bull*, one of the sons, executed a *sealed* writing, which set forth that during the time he was in business with his brother, they had received from their father upwards of $6000, which had been received by them for the purpose of carrying on their business, and which he took and considered as full satisfaction and payment of his full share, part, or dividend of the real and personal estate of his father, and he therefore released, acquitted, and discharged his father's widow, the other heirs and *administrator* from the said share, &c., and all actions, &c.　The date of this paper is the same with that of the oath of the appraisers, who valued the articles in the inventory filed by the accountant with the register.　The daughter testified that none of the family at this time, or for a long time afterwards, entertained a belief that the real estate was of any value proportioned to the price afterwards realized.

In November, 1827, *Alexander Turnbull*, the other son, executed an assignment to William King, Esq., for the consideration of one dollar, and other good causes and considerations, conveying all the real estate of him, the said Alexander Turnbull, whatsoever and wheresoever situate, together with all the goods, wares, merchandise, whatsoever and wheresoever the same may be, whereof the said Alexander is possessed, in trust to sell the same, &c., for the benefit of creditors. · At the ensuing term, Alexander applied to the Court of Common Pleas of Philadelphia county, for the benefit of the insolvent laws, and on the 31st December, 1827, he was discharged.　He afterwards died in the hospital of Philadelphia, in 1835, about the time of the sale of the Luzerne lands by Drysdale and others.　The accountant, however, it is alleged, treated him with kindness.　There was no evidence before the auditor that he knew of the sale or intended sale of the lands, and of their improvement in value.

By deed of 1st April, 1840, Mr. King, the trustee under the assignment of 5th November, 1827, for the consideration of one dollar, assigned all the interest in the property of Alexander Turnbull, Jr., vested in him, to Mary Hubber, the former wife of Alexander Turnbull, in trust for her son, James Turnbull, Jr.

The one-half of the land sold in 1835, by Drysdale and others, to Moore, was not involved in this inquiry; the other two-fourths only were the subject of controversy.

Drysdale was cited to settle a further account, and in January, 1839, he filed in the register's office, Philadelphia, a supplemental administration account on the estate of Alexander Turnbull, senior, in which he charged himself with cash received, · 　$22.39
With the nett proceeds of a judgment and execution in Lu-

zerne county, against Alexander and James Turnbull,　207.39
Balance due administrator,　·　453.53

　　　　　　　　　　　　　　　　　　　　$683.31

He asked credit for the balance on his first account,    $77.15
For cash paid on a judgment against intestate,            75.19
For counsel fees, paid in 1827,                          100.00
For a payment of a claim of one Mussi, paid in 1827,     150.00
For a payment in March, 1829, to Alexander Hampton, of   113.50
And other payments, the account resulting in a balance in his favor of $453.53.

This account was referred to an auditor, who decided that the administrator was chargeable with one-half of the nett proceeds of the resale of the lands, viz. $13,160; but stating an account between the sons and the estate, in which they were charged with an indebtedness to the estate of the intestate, he reported a sum against the administrator, in favor of James Turnbull, son of the intestate, of $829.16, and in favor of Mary Hubber, trustee of James Turnbull, Jr., son of Alexander Turnbull, of $829.16.

Exceptions were severally taken to this report, on the part of James Turnbull, Jr., William King, and the accountant.

The Orphans' Court of Philadelphia made the following decree:

The court, having read the report of the auditor, and heard the arguments of counsel on the same, direct that it be set aside, and order and decree that the administrator of the estate of Alexander Turnbull, deceased, to wit, William Drysdale, be charged with the sum of twelve thousand three hundred and eighty-three dollars ninety-three cents, being the one-half of the proceeds of the real estate referred to in the auditor's report. That the said Drysdale be permitted to retain out of that amount the sum of nine thousand seven hundred and fifty-six dollars, twenty-one cents ($9756.21,) for himself, in right of his wife and Margaret Turnbull. That he be charged with interest on the one-half of that sum, to wit, four thousand eight hundred and seventy-eight dollars, sixty and one-half cents, from the twenty-fifth day of August, eighteen hundred and thirty-five, to the twenty-fourth day of December, eighteen hundred and forty-seven, to be paid to Margaret Turnbull. That he pay to James Turnbull, or his representatives, the sum of one thousand three hundred and thirteen dollars, eighty-five cents, with interest on the same from said twenty-fifth day of August, to said twenty-fourth day of December, making in all two thousand two hundred and eighty-six dollars ($2286). That he pay to Alexander Turnbull, or his representatives, the sum of one thousand three hundred and thirteen dollars, eighty-five cents, with interest on the same, from the said twenty-fifth day of August, to the said twenty-fourth day of December, making in all two thousand two hundred and eighty-six dollars ($2286); and that he pay the costs of the audit, and of the court in these proceedings.

December 24th, A. D. 1848.

An appeal was taken from the decree of the Orphans' Court, and

[Drysdale's Appeal.]

the following exceptions were filed on the part of William Drysdale, the appellant :

1. That the said Orphans' Court decreed that said Drysdale be charged with the sum of $12,383.93, and with interest on $4878.61½, from the 25th of August, 1835.

2. That the said Orphans' Court decreed that said Drysdale pay to James Turnbull, or his representatives the sum of $1313.85, with interest, from August 25th to December 24th, 1847, in all $2286, and that he pay to Alexander Turnbull, or his representatives, the sum of $1313.85, with interest, from August 25th, to December 24th, 1847, in all $2286, and that he pay the costs of the audit, and of the court.

The case was argued by *Budd* and *Ingraham*, for the appellant.—It was contended that the court below, and the auditor, fell into several errors, from disregarding the facts of the case before them. It is entirely clear, from the auditor's report and the accounts of Drysdale, that the estate of the decedent, Turnbull, was in debt to him in a sum exceeding the purchase-money of these lands. Drysdale, therefore, as purchaser, would have paid money to the sheriff, which, as administrator, he would have had the right to take out and retain for his own use, which the law did not require. Griffith *v.* Chew, 8 *Ser. & R.* 17.

Even the judge below, in the decree, credits the administrator with $453.53 as the balance due to him, so that he did not "purchase the land with the money of the estate," an assumption on which the whole decision and decree is founded. That this error is carried through the whole case is apparent from the authorities referred to by the judge : 1 *Ashm.* 309 ; 3 *Bin.* 59 ; 4 *Bin.* 43.

The true state of the case is, that Drysdale, as administrator of A. Turnbull, sold, at sheriff's sale, the interest of Alexander Turnbull, Jr., and James Turnbull—*their* estate—the estate of *third* persons, not of the decedent. He claimed to purchase it with his own money, and has from the time of his purchase disavowed that he did purchase for the estate. The principle that a trustee cannot buy of *himself* is not applicable to the case of a judicial sale like this, made by the sheriff or other judicial officer. The law appoints the sheriff to make the sale, "and no principle of law or equity invalidates the title of a trustee to land which the law has taken out of his hands, and which he purchased from one appointed by the same authority to sell it :" Prevost *v.* Gratz, *Pet. C. C. Rep.* 378 ; Fisk *v.* Sarber, 6 *W. & Ser.* 18.

The fact of the purchase for himself was open and notorious in the place where it was made ; the parties, who it is alleged had a right to disturb it, acquiesced for nearly eleven years. One of them never disturbed it at all, nor did his assignee ; and the other,

with a full knowledge of all the circumstances, released all claims, if any he had. A court of equity will not disturb a transaction against which nothing but an artificial rule can be set up, after such a length of time, and with the view to a profit arising eight years after the sale, out of a circumstance unknown to everybody when it occurs.

*G. M. Wharton* and *Scott*, for the appellees, contended that the first account of the administrator Drysdale was of certain personal estate of the decedent, and did not profess to be a final account. The balance claimed on its face was but $77.15. It was settled before proceedings were had in Luzerne county. The supplemental account was not filed till January 17th, 1839, nearly eleven years after the period at which the accountant alleged himself to have been a creditor to the amount of $453.53.

There was no acquiescence by any of the appellees. There was no proof of any debts due to the intestate, by the sons, except the judgment, and claims long barred by the statute of limitations.

That the court below had the right to decree distribution : 5 *Watts* 303, Leisenring v. Black; 7 *Ser. & R.* 230, Riddle v. Murphy.

That a person acting in a fiduciary capacity cannot purchase the trust estate for his own benefit : 5 *Watts* 304, Leisenring v. Black; 4 *W. & Ser.* 426–431, Kinley v. Hill; 6. *id.* 18–21–27; 10 *Watts* 320 ; Fox v. Heffner, 1 *W. & Ser.* 376.

The general principle of equity is, that if a receiver, executor, factor, or trustee lay out the money which he holds in his fiduciary character, in the purchase of real property, and take the conveyance to himself, he who is entitled to the money may follow the same, and consider the purchase as made for his use and the purchaser as his trustee : 7 *Barr* 175 ; 3 *Bin.* 59 ; 4 *Bin.* 43 ; 1 *Ashmead* 309.

That an unfaithful trustee is not entitled to compensation : 2 *W. & Ser.* 566, Dyott's Estate; 2 *Bro. C. C.* 400, Fox v. McGrath; *Hill on Trustees*, 558; 5 *Barr* 413, Stehman's Appeal ; 7 *Barr* 56, McCahan's Appeal.

The opinion of the court was delivered April 30th, 1850, by

ROGERS, J.—That the administrator is chargeable in account with the value of the lands purchased at the sheriff's sale, is a question devoid of difficulty. The administrator, through the medium of the attorney of the estate, purchased the property at the sheriff's sale, as a trustee, for the benefit of the heirs. This is the legal implication arising from the whole transaction. It was paid for with their money, the purchase-money being liquidated by a receipt given to the sheriff on account of the judgment, and no money paid by the administrator out of his own pocket, except the costs and the attorney's fee, afterwards brought into the admi-

[Drysdale's Appeal.]

nistration account.   The principle of law, in its application to the facts of this case, is plain and simple.   An attorney at law, as is held in Leisenring *v.* Black, 5 *Watts* 303, conducting the sale on an execution, cannot purchase land for his own benefit, to the prejudice of his client, for a less sum than the amount of the claim for which it was sold.   In the case cited, he is declared to be a trustee. Judge KENNEDY, who delivered the opinion of the court, observes, that "no rule seems to be better settled than that, wherever confidence is reposed in a person, who, from his being placed in such a situation, has it in his power to gain an advantage without the certainty of discovery, by sacrificing the interests of those he is bound to protect, he shall not be suffered to enjoy it except by their consent, and not even then, unless they be competent to part with the right to protection."   This is an honest and salutary principle, serving as a check and a protection against fraud.   Of the wisdom of the rule, this case affords a striking example.   Leisenring *v.* Black is the case of an attorney, and, under the rule there established, it will not be pretended that Mr. Cunningham, the purchaser at the sale, could have held it against the heirs; and it is difficult to discover any reason why an administrator, who also acts in a fiduciary character, can be placed in a better position. It must be remarked, that Mr. Cunningham was the attorney of the estate, and not the attorney of Mr. Drysdale.   He was therefore their trustee, and not his; and the same trust attaches to Drysdale, who afterwards took a conveyance in his own name.   In addition to Leisenring *v.* Black, may also be cited to the same point, Riddle *v.* Murphy, 7 *Ser. & R.* 230;   Campbell *v.* Pennsylvania Life Insurance Company, 2 *Whar.* 53;  Kinley *v.* Hill, 4 *W. & Ser.* 426;  and Fisk *v.* Sarber, 6 *id.* 18.

We concur with the court in disallowing the commissions, on the authority of Swartzwelder's Accounts, 4 *Watts* 77;  Dyott's Estate, 2 *W. & Ser.* 506, and other cases.   We have a right to require honesty and fair dealing from every description of trustees.   Here all the proceedings were studiously concealed from the parties in interest.   Instead of informing them, as he ought in all fairness to have done, that he purchased the property in his own name and for his own use, but with the funds of the estate, he attempts to conceal it from them and afterwards appropriates to his own benefit the profits made by a re-sale of the premises.

We are of opinion that the fee paid to the attorney ought to be allowed the accountant.   He was the attorney, as before remarked, of the estate, and not of the administrator personally.   We have no reason to believe the attorney was other than he assumes to be on the record, or that he was cognizant of the fact, at the time the services were rendered, that the administrator had any intention to deal improperly with the heirs.   Nor is it clear that, at the time

of the purchase, Drysdale himself intended any thing except what was fair and honest in regard to the estate.

It is objected, that the court erred in decreeing distribution of the fund on the facts reported by the auditor, though they had set it aside because he was not authorized to make it. But in this we perceive. neither inconsistency nor error. If, as seems to be conceded, the auditor had no authority to make distribution, there was nothing wrong in setting it aside. But although the auditor had no power, yet it does not follow the court had not. They have, beyond question, ample authority to make distribution; and whether properly exercised in this case, is the only question. The auditor says, that in the course of the hearing before him, the counsel and the parties on both sides treated the case as if he had been authorized to report a distribution of the amount, if any, which might be found due by the accountant. On this point, both parties were heard; nor was it alleged there or here, that there are any additional facts to be produced, which will in any way affect the result. Why, then, send the case to another auditor, if the court have the necessary facts to enable them to make a final decree ?

We concur with the Orphans' Court, that all the accounts between the father and his sons, Alexander and James, except the judgment, are barred by the act of limitations. We see no peculiar equity which will debar them from availing themselves of their legal defence to those claims. In the distribution of the fund, they are only to be charged with the amount of the judgment, after deducting the sum for which the land sold at the sheriff's sale.

As to the amount to be distributed, we agree with the Orphans' Court, with the exception of the disallowance of the fee to the attorney. The other parts of the decree are confirmed.

The only remaining question is as to the distribution of the fund. The intestate left two sons, Alexander and James; and two daughters, Margaret, and Jane the wife of Mr. Drysdale. If this were all, the estate would be divided equally between the brothers and sisters. But the difficulty is as to the right of Alexander and James to participate in the fund. Alexander, (since deceased, leaving a son, James Turnbull, Jr.,) on the 5th November, 1827, assigned all his estate, of whatever kind, real or personal, to William King, in trust that he would sell the same, and apply the proceeds to certain creditors therein named, in the order specified; and in further trust, to apply them to the payment, in equal and ratable proportions, to all his creditors, according to their respective debts, and that the trustee, after paying the aforesaid debts and expenses of executing the trust, do and shall pay the balance which may remain to Mary Turnbull, his wife, (afterwards Mary Hubber.) Thirteen years afterwards, viz. 1st April, 1840, William

[Drysdale's Appeal.]

King conveyed to Mary Hubber, to whom the balance of the estate is directed to be paid, all the right, title and interest of the property vested in him by the conveyance or assignment, to have and to hold the same, to her, in trust for James Turnbull, Jr., his heirs, executors and administrators.    After a lapse of more than twenty-two years since the assignment, the law presumes the debts have been paid and the trust executed, so far as respects the creditors. There is, therefore, nothing in the way of James Turnbull, Jr., for whose benefit the property is held by his mother, Mary Hubber. This disposes of the interest of Alexander Turnbull in favor of his son, James Turnbull, Jr.    He unquestionably has such an interest in the estate as entitles him to call for an account.

Next, as to the interest of James Turnbull.

James Turnbull, the 23d August, 1826, reciting that he had received from his father, in his lifetime, upwards of six thousand dollars, which he considers as full satisfaction and payment of all such sums of money, shares, purparts and dividends, on account of his full share, part or dividend of the real and personal estate of the deceased, releases, acquits, and for ever discharges Margaret Turnbull, (widow of the deceased, herself since dead,) the other heirs and administrators, of and from his share and dividend of the estate.    It must be remarked, in the first instance, there is nothing in the objection of want of consideration; for apart from the motive which caused the execution of the instrument, as recited in the deed, the seal imports a consideration, as is ruled in Wentz *v.* De Haven, 1 *Ser. & R.* 317; Coe *v.* Hutton, 1 *id.* 408; Campbell's Estate, 7 *Barr* 100; Pratt *v.* Crocker, 16 *Johns.* 270, and other cases which might be cited.    It being under hand and seal, it requires no proof of any consideration to support it.    It is a valid instrument, unless proof be given of fraud in obtaining it. Of this there is no allegation made.    The operation of the deed is the same, whether it be viewed as a release, as passing an estate, or *mitter l'estate*, 2 *Black. Com.* 324, as in case of the release of one of two co-parceners who releases her right to the other, that being deemed a privity of estate between the releasor and releasee, or an agreement to convey, which a chancellor would hold it to be, in order to effectuate the manifest intention of the parties.    Viewed in either aspect, it passes a fee-simple in this whole estate to Margaret Turnbull and Mrs. Drysdale, the wife of the accountant. From this, it follows that the fund must, in the first instance, be divided into three parts, one-third to James Turnbull, the son of Alexander Turnbull, one-third to Margaret Turnbull, and the remaining third to Mrs. Drysdale.    But Margaret Turnbull, the widow of the deceased, being dead, her interest under the conveyance by James, being the one-fourth of one-third, must be divided between all the children, including James himself, who is entitled as one of the heirs and representatives of his mother.    In ascer-

[Drysdale's Appeal.]

taining the amount due to each, one-twelfth of the fund must be deducted on account of James, the residue divided between Margaret, Mrs. Drysdale, and James Turnbull, Jr., son of Alexander, one-third to each.

The case is referred to the prothonotary to make necessary calculations on the principles stated, in order to a final decree for the distribution of the fund. [He declining, it was referred to B. Gerhard, Esq., who subsequently reported, viz. in June, 1850, and the decree reported by him was afterwards, viz. January 28, 1851, after argument, entered as the decree of this court.]