## ELIZABETH DUNLOP, for the use of STEWART, *against* BARD and RANKIN, executors of JOHNSTON.

J. J. devised to E. as follows:—"Item, it is my will that when my estate is sold, both real and personal, out of the moneys arising from the same, I allow my executors to give E. D. my niece, formerly F. the sum of $1350, lawful money of the United States, in part of what her husband J. D. is indebted to me, the above to be in full of all their claims against my estate." "And it is my will, that if my wife accepts of dower, as within set forth, she shall be first paid by my executors, and E. D. next." J. J. died in 1817, at the time of making said will, J. D., the husband of E. D., was indebted to the testator on a draft of R. M. on J. D. and accepted by J. D. for £511.5, dated 18th November, 1830; on this draft there was written by the testator as follows: "The love and affection I have for E. F., now E. D., I make over the principal of £511.5, and make over my right unto her assigns, witness my hand and seal, this 28th May, 1807. The interest to be to me while I live." On this draft, the executors of J. J., brought suit against the administrators of J. D., and by a report and judgment recovered to the amount of the interest due on it. J. D.'s estate became insufficient to pay his debts, but before this was discovered, the administrators of J. D., had paid E. D., sums exceeding $2500. Evidence of these payments were exhibited to the referees in the suit on the draft, and it was admitted, that E. D. was unable to repay such advances. In an action brought by E. D., against the executors of J. J., to recover the said legacy, it was held that the intention of the testator, was to declare the legacy payable at all events; leaving it to the chances of survivorship, whether the debt due by the husband, should be collected and paid to his wife, as part of the testator's estate, or defalcated as satisfaction.

The act of Assembly, which gives an action at law, instead of a bill in equity, was not intended to vary the legatee's rights. And here a chancellor would call in every party interested, and inquire into the value of the plaintiff's legacy, and what she had actually received. The payment made by her husband's administrators to her, was in their own wrong, and a devastavit as respects the executors of J. J., but these executors had a right to treat it as a rightful payment of her legacy, which when ratified by them, was as effective, as if the payment had been made on their previous order, and amounted to a satisfaction of such legacy.

Error to the Court of Common Pleas of *Franklin* county. ____

This was an action on the case, brought by *Elizabeth Dunlop,* for the use of *R. Stewart,* to recover a legacy devised to said *Elizabeth,* by the will of *James Johnson.*

*James Johnson,* by his will, dated September, 1814, and proved May, 1817, devised to said *Elizabeth* as follows, viz: "Item, it is my will, that when my estate is sold, both real and personal, out of the moneys arising for the same, I allow my executors to give *Elizabeth Dunlop,* my niece, formerly *Findley,* the sum of

(Dunlop, for use, *v.* Bard and Rankin.)

thirteen hundred and fifty dollars, lawful in the United States, in part of what her husband *John Dunlop*, is indebted to me, the above to be in full of all their claims against my estate."

"And it is my will, that if my wife accepts of dower, as within set forth, she shall be first paid by my executors, and *Elizabeth Dunlop* next."

Of this will *A. Bard* and others, were appointed executors.

*James Johnston*, died May, 1817.

At the time of making said will, *John Dunlop*, the husband of *Elizabeth*, was indebted to the testator on a draft of *Richard Miles*, dated November 15th, 1813, on *John Dunlop*, in favor of *James Johnston*, for £511. 5, which was indorsed by *Dunlop*. On this accepted draft there was written by the testator as follows, viz: "The love and affection I have for *Eliza Findley*, now *Dunlop*, I make over the principal of £511.5, and make over my right and title unto her assigns, witness my hand and seal, this 28th May, 1807.                                            JAMES JOHNSTON.

The interest to be to me while I live.                    J. J.

By cash you paid *Johnston* of *John*, on my order, interest £100.                                                J. J."

*John Dunlop*, died shortly after *James Johnston*.    In October, 1817, an action was brought by *James Johnston's* executors, against *John Dunlop's* administrators, in *Centre* county, on the above draft, and a report and judgment was had in favor of the executors, to the amount of interest due on said draft.

John Dunlop's estate was considered at his death to be more than sufficient to pay his debts, and his administrators before the discovery of the insolvency of the estate, had permitted *Elizabeth Dunlop* the widow, to take property at the appraisement, and had also paid her various sums of money at different times, some of which was for the maintenance of the children; the amount of property taken by her, and the money paid her, exceed $2500. Evidence of which payments was exhibited to the referees in the action of *Johnston's* executors against *Dunlop's* administrators. And it was admitted, that *Elizabeth Dunlop*, was totally unable to repay such advances and payments made to her by the administrators.

The cause was argued by *Dunlop*, for the plaintiff in error, and plaintiff below, and by *Chambers*, contra.

The opinion of the court was delivered by

GIBSON, C. J.—The principal due on the 'accepted draft, was from the beginning intended for the plaintiff, leaving the conse-

(Dunlop, for use, *v.* Bard and Rankin.)

quences of the gift to the marital rights of her husband, whatever they might be at the testator's death. To carry this intent more certainly into effect, he bequeaths to her very nearly the same sum, as part of what her husband owes him, and in full of all claims on his estate. So far the intention is clear. But he directs this legacy to be paid out of the sales of the real and personal estate; and as it could not be so paid, and at the same time deducted from the husband's debt, it is supposed that the memorandum of transfer on the accepted draft, must receive a testamentary sanction to give effect to every part of the will. The intention however, seems to have been to declare the legacy payable at all events; leaving it to the chances of survivorship, whether the debt due by the husband, should be collected and paid to his wife, as part of the testator's estate, or defalcated as satisfaction; and in this way, no part of the will is without effect.

Then as to the question of satisfaction. The act of Assembly, which gives an action at law, instead of a bill in equity, was not intended to vary the legatee's rights; so that the question here is, what would a chancellor do? He would call in every party however remotely interested, and inquire into the value of the plaintiff's legacy, and the amount she had actually received. Her husband's administrators have paid her, in their own wrong, moneys which would otherwise have come to the hands of the testator's executors, and increased his estate to an amount beyond the value of her legacy. As against the executors this was a devastavit, but one to which she was party, and equity would protect them as far as it could, by throwing the consequences on the party actually benefitted. Accordingly they have been protected to the value of her legacy in the suit on the accepted draft. Does not the same equity regulate the liability of the parties all round? Had she not consented to the devastavit, she would have received her legacy out of the assets in hand; but having anticipated the regular course of payment, by devoting a fund which was part of the assets, she cannot allege that her husband's administrators committed a devastavit, in putting it into her possession. With the concurrence of the executors, what is there that could prevent them from treating it as a rightful payment of her legacy? A precedent authority would undoubtedly produce this consequence, and a consequent ratification is equally operative. Then any defence here is a ratification, and it of course prevents a recovery.

Judgment Affirmed.