# Milne's Appeal.

1. The Orphans' Courts of this Commonwealth have power to revise and correct their former adjudications, if in those adjudications they discover palpable mistake, produced either by their own inadvertence or by the blunder of the parties.

2. Upon the audit of the account of the administrators of a decedent, a certain distributive share was awarded to a son of the decedent, and an adjudication to that effect was filed. Through inadvertence or mistake, the existence of certain debts due by the son to the decedent's estate was not called to the attention of the court. Subsequently the administrators presented a petition, setting forth the mistake and praying for a readjudication, which the court granted. *Held*, that this was not error.

3. In the distribution of a decedent's estate in the Orphans' Court, the indebtedness of a distributee to the decedent, against which the statute of limitations has run at the time of decedent's death, cannot be set off as against such distributee's share in the estate.

4. The statute of limitations begins to run on a note payable on demand, from its date, and not from the time of demand.

5. Taylor *v.* Witman, 3 Grant Cases 138, followed. Girard Bank *v.* Penn Township Bank, 3 Wright 92, and Finkbone's Appeal, 5 Norris 368, distinguished.

6. Where a debt is proved in bankruptcy, the running of the statute of limitations against it is not suspended by the operation of the United States bankrupt act. Where, therefore, said debt is set up in another court, either as ground of recovery or ground of set-off, the statute of limitations is as applicable to it as though it had not been proved in bankruptcy.

7. The act of Congress of June 22d 1874, section 7, 18 U. S. Stat. at Large 179, providing that a creditor proving his claim against a bankrupt shall not be held to have waived his right of action against such bankrupt where a discharge has been refused or the proceedings have determined without a discharge, has no application to cases where there has been no final termination of the proceedings in bankruptcy.

[*Milne's Appeal.*]

January 27th 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Orphans' Court of *Philadelphia County:* Of January Term 1882, No. 40.

Appeal of Francis F. Milne, from a decree in the matter of the distribution of the estate of Archimedes J. Bucknor, Sr. The facts were as follows :—

On March 19th 1878, Francis F. Milne, being the holder of two judgments against A. J. Bucknor, Jr., a son of A. J. Bucknor, Sr., deceased, amounting to $11,556.76, issued writs of attachment execution thereon, in the court of Common Pleas No. 2, summoning as garnishee William A. James, administrator of the estate of the said A. J. Bucknor, Sr., deceased.

On September 30th 1878, William A. James, administrator, as aforesaid, filed his first account, showing a balance for distribution of $155,061.74 ; and on February 24th 1879, he filed his second account, showing a balance for distribution of $24,800.19.

A. J. Bucknor, Jr., died November 2nd 1878.

Upon the adjudication of said first account, the Orphans' Court found that the distributive share of A. J. Bucknor, Jr., deceased, was $14,767.69, which was awarded to his administrator. The pending suits in attachment execution having been brought to the notice of the court, the adjudication directed : " The share of A. J. Bucknor, Jr., deceased, will be retained by accountant until the final determination of the attachments execution before mentioned."

Upon the adjudication of the said second account, the Orphans' Court awarded : To William H. Bucknor, administrator of A. J. Bucknor, Jr., deceased, $2,361.93."

Both said adjudications were confirmed sec. reg., no exceptions being filed thereto.

On June 21st 1879, the said William A. James, administrator of the estate of A. J. Bucknor, Sr., deceased, filed petitions for a review of the foregoing adjudications, averring :—

" That when the auditing judge, Hon. WILLIAM B. HANNA, P. J., made said adjudications no question was passed upon by this court, in regard to said share of A. J. Bucknor, Jr., deceased, or any part of it, but, owing to the said attachments, the amount of his distributive share was simply designated, without considering any of the questions in relation to the amount that said Archimedes J. Bucknor, Jr., would be entitled to receive after deducting any indebtedness which he owed his father at the time of his death.   All questions in regard to the same were to be left to await the determination of said attachment suits then pending, and the adjudication was not in any way to conclude your petitioner, but all questions in relation to said interest of

A. J. Bucknor, Jr., were to be considered, and determined thereafter."

That said A. J. Bucknor, Jr., was in his life-time indebted to the estate of A. J. Bucknor, Sr., on two separate debts, together exceeding the amount of his said distributive shares, one being upon a due-bill, found among the papers of A. J. Bucknor, Sr., as follows:

"PHILADELPHIA, January 1st 1867.

"$10,000.

"Due A. J. Bucknor, Esq., on demand, Ten Thousand Dollars, value received.

(Signed)　　　"A. J. BUCKNOR, JR."

And the other indebtness arose thus:—On October 14th 1870, the firm of Bucknor, McCammon & Co., of which A. J. Bucknor, Jr., was a member, filed their petition in bankruptcy, and in proceedings thereon A. J. Bucknor, Sr., a creditor of said firm for money loaned, proved his claim for $13,203.39. No discharge was applied for by said bankrupts, and no order was made discharging them.

The petitioner alleged that in the said pending attachment suits in the Common Pleas, the said adjudications are conclusive as to the amount of the distributive share due to A. J. Bucknor, Jr., or his estate, and that no set-off can be set up therein.

The petition therefore prayed that said adjudications be opened and reviewed, so that the question of indebtedness by A. J. Bucknor, Jr., to his father's estate may be ascertained, and the same be set off against his distributive share therein.

To this petition the administrator of A. J. Bucknor, Jr., deceased, filed an answer admitting the facts as alleged.

Francis F. Milne, as attaching creditor, demurred to the petition, on the grounds: (1) That the petition does not allege any error of law or fact in the adjudications; nor that any new matter has since arisen or been discovered. (2) That the indebtedness of A. J. Bucknor, Jr., sought to be set off, is barred by the statute of limitations. (3) Is is not alleged that the estate of A. J. Bucknor, Sr., does not comprise real estate or other property out of which the indebtedness, if valid, may be retained.

After argument, the court, on October 16th 1879, entered the following decree: "That as the question or questions in regard to the amount of the distributive share which said A. J. Bucknor, Jr., deceased, or his representative may be entitled to receive, after deducting any set-off or advancements which are claimed to be set off against or deducted from the same, were not considered or determined by this court in making the adjudications in the

estate of A. J. Bucknor, Sr., deceased, and it was intended that said question or questions should be settled and determined in the attachment suits, pending in the Court of Common Pleas No. 2, in and for the city and county of Philadelphia, and referred to in said petition—it is ordered that the adjudication be modified as prayed for, and that the sum of $14,767.79 in the first adjudication is simply the amount calculated, and is not the balance that would remain after deducting set-offs and advancements; that said questions of set-off and advancement, and whether there was any balance after deducting such set-offs and advancements were not determined by this court.

" It is further ordered that said adjudication is not conclusive as to the amount which said A. J. Bucknor, Jr., deceased, or his representatives are entitled to receive, but that whether there is a set-off or advancement, and if so, the amount thereof, and whether there is any balance remaining after deducting the same, are left to be determined in said attachment suits."

On October 18th 1880, the issues in the attachment suits in the Common Pleas were tried and resulted in a verdict for the plaintiff for $6,839.40, and that the garnishee held sufficient funds of defendant to pay the judgment—subject, however to certain questions of law reserved. No final judgment was entered in said attachment suits.

On January 29th 1881, the Orphans' Court made an order recommitting both the said accounts of William A. James, administrator of A. J. Bucknor, Sr., deceased, to the auditing judge for readjudication, before whom William A. James, administrator, claimed to set off against the share of A. J. Bucknor, Jr., the indebtedness due by him to the estate of A. J. Bucknor, Sr., upon the said due-bill for $10,000, and that due by said A. J. Bucknor, Jr., as a member of the firm of Bucknor, McCammon & Co. upon the claim which had been proved in bankruptcy, as above set forth.   Francis F. Milne objected to these claims of set-off, on the ground that both claims were barred by the statute of limitations.   The objection was not sustained, and the auditing judge held that as the total indebtedness of A. J. Bucknor, Jr., exceeded the amount of his distributive share, his estate was not entitled to share in the amended distribution.

Exceptions filed by Milne to this readjudication were dismissed by the court.   HANNA, P. J., saying, in an opinion filed :

" That the running of the statute is tolled by the pendency of the proceedings in bankruptcy, we think is clearly shown by our brother PENROSE, in Bucknor's Estate, 36 Legal Intell. 393.

" And it is now settled, in the case of an instrument for the payment of money payable on demand, the statute does not begin to run until the right of action accrues, and that is, when

the demand is made : Finkbone's Appeal, 5 Norris, 368, over-ruling Laforge *v.* Jayne, 9 Barr 410. The commencement of a suit at law, or the presentation of a claim upon such an instrument in the Orphans'. Court, or before an auditor appointed by the court, is a sufficient demand. And if no prior demand for payment be proved, interest will then only begin to run, unless otherwise expressed in the instrument itself.

" We accordingly dismiss the exceptions and confirm the readjudications."

Francis F. Milne thereupon took this appeal, assigning for error, the granting of the petition for review, and the decree dismissing his exceptions to the readjudication, and confirming the same.

*M. Arnold*, for the appellant.—The petition for review did not set up any new matter discovered since the adjudications were made ; nor did it aver that which is essential to such a petition, that there had been no payments made in pursuance of said adjudication : The Orphans' Court has no jurisdiction upon a petition for a review under the Act of 1840, to vacate a decree confirming an auditor's report distributing a fund, after actual payment to the distributees in accordance with the decree : Lehr's Appeal, 10 W. N. C. 282 ; Cramp's Appeal, 31 P. F. Smith 90. In point of fact the amount awarded to A. J. Bucknor, Jr.'s administrator by the adjudication on the second account, had been paid to him before the petition for review was filed, and that payment was past recall. Yet it is said that it has been paid back, and thus wrong done to the creditors of A. J. Bucknor, Jr.

Proceedings in bankruptcy do not suspend the running of the statute of limitations, as against new acquisitions of the bankrupt. The bankrupt Act did not prohibit the commencement of an action, but only the prosecution of it to judgment : Sec. 5106 Rev. Stat. U. S. ; Richardson *v.* Thomas, 13 Gray, 381 ; Roscoe *v.* Hale, 7 Gray, 274 ; Heckert's Appeal, 12 Harris 487. In re Eldridge, 12 Bank Reg. 540 ; Christy *v.* Flemington, 10 Barr 129 ; and if no discharge is granted or applied for within one year from the adjudication of bankruptcy, the stay becomes inoperative and creditors may obtain leave to proceed to judgment in the state courts.

In the case of a note payable on demand, the statute of limitations begins to run from its date, and no demand of payment is necessary before suit brought : Taylor's Adminr. *v.* Witman's Adminr., 3 Grant 138 ; Byles on Bills, 273, and notes.

The court below confounded a due-bill payable on demand with a deposit of money to be returned when demanded. The one is a matter of contract merely, the other is a trust arising

out of contract, and the statute does not run in such cases until demand is made : Girard Bank *v.* Bank of Penn Township, 3 Wright 92; Finkbone's Appeal, 5 Norris 368.

*Samuel Gustine Thompson,* for the appellee.—The statute of limitations operates only on the remedy, it does not extinguish the debt. Hence, while a creditor may not sue, after six years, to recover a debt, yet where the creditor subsequently has it in his power to set off the amount of the debt, he may do so, such right to *retain* not being affected by the statute. The statute does not run against proceedings in the Orphans' Court to recover a distributive share, and where the distributee is indebted to the estate, the administrator has the right to deduct or retain the indebtedness out of the share : Spears *v.* Hartly, 3 Espinasse 81; Thompson's Appeal, 6 Wr. 345 ; 2 Williams on Executors, 5th ed. 1174. It is but equitable that the distributee, having by nonpayment of his indebtedness diminished the assets of the decedents' estate pro tanto, should not take anything out of the estate until he makes good what he owes it. " He must acquit himself of his indebtedness before he can receive any bounty out of the assets." Smith *v.* Smith, 7 Jurist, N. S. 1140.

The bankruptcy proceedings suspended the running of the statute : Collester *v.* Hailey, 6 Gray 519 ; Richardson *v.* Thomas, 13 Gray 381 ; Hauger *v.* Abbott, 6 Wall. 532 ; In re Eldridge, 12 Bank. Reg. 542; Blumensteil on Bankruptcy 240.

The due-bill was payable on demand, and, until demand, was not due, and the statute did not begin to run : Finkbone's Appeal, 5 Norris 368 ; Laforge *v.* Jayne, 9 Barr 410 ; Codman *v.* Rogers, 10 Pick. 112.

The Orphans' Court had ample power, outside the Act of 1840, to review its adjudication and make it conform to the justice of the case. No injury was done to the appellant, as his attachment bound only the interest of A. J. Bucknor, Jr., in his father's estate, subject to his indebtedness thereto ; and the appellant acquired no additional rights by a pro forma decree, in a proceeding in the Orphans' Court to which he was not a party, which merely ascertained the nominal amount of A. J. Bucknor, Jr.'s distributive share, without considering the question of his indebtedness. The appellant stands in the shoes of his judgment creditor, A. J. Bucknor, Jr., and the latter, or his administrator, had no right to object, and in fact did not object, to the review of the adjudication for the purpose of ascertaining the true amount, if any, to which he was entitled : George's Appeal, 2 Jones 260 ; Bishop's Appeal, 2 Casey 470 ; Whelen's Appeal, 20 P. F. S. 410 ; Metz's Appeal, 11 S. & R. 204 ; Strong *v.*

Bass, 11 Casey, 333; Springer's Appeal, 5 Casey 210; Wallace
*v.* Keyser, 1 P. F. S. 493; Bouslough *v.* Bouslough, 18 P. F. S.
495.

Mr. Justice GORDON delivered the opinion of the court,
February 20th 1882.

The appellant, Francis F. Milne, is a creditor of A. J.
Bucknor, Jr., and on the 21st of January 1878, levied two
writs of attachment on the distributive shares of the debtor in
the hands of William A. James, administrator of the estate of
A. J. Bucknor, Sr., and it is thus that Milne becomes interested
in the distribution of this estate, and in the decree made by the
court below. On settlements of the accounts of the administra-
tor, the last one audited January 21st 1879, the distributive
shares of the younger Bucknor were found to be $17,129.72, and
so adjudged. At the time of the death of A. J. Bucknor, Sr.,
which occurred December 13th 1877, he held two several
claims against his son; one a due-bill, payable on demand, for
$10,000, dated January 1st 1867, the other a claim against the
firm of Bucknor, MCcamman & Co., made up of a note for
$3,395.46, due October 5th 1870, and an account for money
loaned, in the sum of $9,807.93, due September 12th of the
same year. This firm went into bankruptcy, October 14th
1870, from which, as yet, there has been no discharge, and the
claim above stated was, among others, duly proved. On the
settlements in the Orphans' Court, through some inadvertence or
mistake, the effect of these claims, as off-sets to the distributive
shares of the younger Bucknor, was not passed upon, and on a
petition of the administrator, dated June 21st 1879, setting
forth this mistake, which is not denied, the court opened its
former decrees and proceeded to a readjudication. To both the
above mentioned claims against A. J. Bucknor, Jr., the appel-
lant interposed the plea of the statute of limitations, which was
overruled by the Orphans' Court, and the set-off as claimed by
the administrator was allowed. We have, therefore, two prin-
cipal questions presented for our consideration :—The power
of the Orphans' Court to open and correct its decree, and the
effect of the statute of limitations upon the claims of the estate
against A. J. Bucknor, Jr. As to the first question, we answer
it by saying that we have no doubt about the power of the
Orphans' Court to revise and correct its former adjudications,
if in those adjudications it discovered a palpable mistake, pro-
duced either by its own inadvertence or by the blunder of the
parties. A sense of fair dealing and justice would be authority
enough, in the absence of any other, for so holding. Neverthe-
less, other authority will be found, and that directly in point, in
George's Ap., 2 Jo. 260, where the subject is so fully discussed,

that further argument from us is unnecessary. This out of the way, next in order comes the question involving the statute of limitations.

If this statute is operative under the circumstances of this case, then both the claims above referred to are barred thereby, and the appellant is entitled to a reversal of the decree of the court below. But, as we have seen, if it is not operative it is not for the want of time, for the due-bill as well as the claim against Bucknor, McCammon & Co., were more than six years old at the time of the death of the elder Bucknor. But it is urged that the statute does not apply to a distribution in the Orphans' Court, where there is an exercise of the right to retain from a distributee's share, his indebtedness to the estate.

To support a doctrine such as this, nothing has been produced from our own books but the dictum of Mr. Justice READ in Thompson's Ap., 6 Wr. 345, and that is based solely on English authorities. On the other hand the contrary was held in the recent case of Reed *v.* Marshall, 9 Nor. 345, where on a suit for a legacy an attempt was made to set off a claim of the estate against the legatee, which had been barred by the statute prior to the death of the decedent.

Nor is the attempted distinction between equitable and common law proceedings, as respects the statute of limitations, well founded. As was said in Hoch's Appeal, 9 Harris 280, a case where the Orphans' Court, on objection of a legatee, refused to allow an executor to retain a debt due himself which was barred by the statute in the life of the testator, a court of equity will not pass upon a claim bad at law. Neither has the argument for a contrary doctrine a sound premise. It is urged that the statute does not pay the debt; that it only operates on the remedy.

It is true that the statute operates only upon the remedy, or action for the collection of the debt, but it thus operates because of the presumption that the claim has been paid or otherwise extinguished, if its collection has not been insisted on within six years, and that, therefore, it would be inequitable, after that time, to compel its payment. Hanger *v.* Abbott, 6 Wall. 538.

Again, the court below thought that as the ten thousand dollar claim was a due-bill, payable on demand, the statute did not commence to run from its date, but only after demand made. This was a mistake. Taylor *v.* Whitman, 3 Gr. 138, holds that the statute begins to run, on a note payable on demand, from its date, and that no demand is necessary before suit brought. The cases of the Girard Bank *v.* The Penn. Township Bank, 3 Wr. 92, and Finkbone's Appeal, 5 Nor. 368 are not in point. Those were suits for the recovery of depos-

its, and the contracts were in the nature of bailments for safe keeping ; moreover, in the case last named, it was expressly said that the obligation sued upon was not in the nature of a due-bill but that it had rather the character of a deposit.

As to the claim against Bucknor, McCammon & Co., we cannot agree with the court below that the running of the statute was suspended by the operation of the United States Bankrupt Act. The probate of the claim, under that Act, is like the prosecution of any other suit ; if it is successful all is well and the account is secure, but if not, if the creditor is in the end obliged to resort to a new process in the state courts for the recovery of his debt, we cannot see upon that principal, in order to avoid the running of the statute of limitations, he can count out the time consumed by his first abortive attempt. He is not compelled to prove his claim ; but if he does, it is a voluntary surrender of it, and in this it is altogether unlike those cases where a condition of war, as in Hanger v. Abbott, supra, or public policy, as in Hutchinson v. The Bank, 5 Wr. 42, leaves the creditor without remedy. But under such circumstances his will is not consulted ; the courts are closed against him, hence, of necessity, the running of the statute is suspended until the public emergency has passed, and he is again clothed with the power of asserting his rights.

In the case now being considered, Bucknor had two methods of redress presented for his consideration and acceptance ; he might prove his claim in the bankrupt court, or he might sue in the state court. If he adopted the first method he voluntarily abandoned all other remedies, and made an absolute surrender of his claim, and it is only by virtue of the Act of Congress of June 22d 1874, that he could be restored to his former condition in case a discharge was refused to the bankrupt, or the proceedings were determined without a discharge. Now Bucknor's claim against the firm of which his son was a member, was proved some seven years before his death, and had there been no unwonted delay a discharge would have been had long before the date of his decease ; but in that event, the indebtedness now sought to be used as an off-set would have been fully cancelled, and the use of it as now intended, against the after-acquired estate of the younger Bucknor, would have been out of the question. But as yet there has been no discharge, neither have the proceedings in bankruptcy been determined without a discharge, hence, the act of 1874 does not apply to the claim in controversy, and it may be that it never will so apply. How then can this surrendered claim be interposed as a set-off? or must the distribution await indefinitely for the happening of a contingency, now rendered exceedingly remote by the death of both the principal parties ? We think it will not subserve the

[Camden & Atlantic R. R. Co. *v.* Hoosey,]

purposes of either law or equity thus to suspend the running of the statute on the mere expectation of an event that may never come to pass.

If, however, the second method were adopted, the bar of the statute would be effectually prevented, and the creditor might prosecute his claim to judgment, subject only to such delay as might result from the interposition of the court having jurisdiction of the proceedings in bankruptcy.

We conclude, then, that the delay in this case having arisen from no legal or political necessity, but from the voluntary act of the creditor, the bar of the statute is effective to defeat the appellee's claim.

> The decree of the court below is now reversed and set aside, and the former adjudications restored and affirmed at the costs of the appellee.