ESTATE OF DAVID LIGHT, DECEASED.

APPEALS BY DAVID LIGHT, JR., FROM THE ORPHANS' COURT
OF LEBANON COUNTY.

Argued February 19, 1890—Decided October 6, 1890.
[To be reported.]

1. It is a well settled rule that when the statute of limitations begins to run against a debt, it will not stop because of the death of either party; and, since the decision of Yorks' App., 110 Pa. 69, this is a rule of general application.

2. When an attempt is made, in the distribution of a decedent's estate in the Orphans' Court, to set off against a legacy a debt from the legatee to the testator, the legatee may plead the statute of limitations, notwithstanding that the debt was not barred at the testator's death.

3. The reasoning of Thompson's App., 42 Pa. 345, as respects the statute of limitations, is at best obiter dictum, as the cases on which it is based do not support it, McClintock's App., 29 Pa. 360, being overruled in Yorks' App., 110 Pa. 69, and Courtenay v. Williams, 3 Hare 539, is not in accord with the current of our decisions.

4. While an adjudication, allowing a claim in a distribution in the Orphans' Court, will toll the bar of the statute of limitations: Reber's App., 125 Pa. 20; the allowance of a dividend upon a debt by a decree of the Court of Common Pleas, distributing funds of an assigned estate, will not have that effect.

5. The payment of part of a debt, by an assignee for creditors of the debtor, will not keep the debt alive by implying a new promise of the

Statement of Facts.

assignor to pay it, because the assignee is not the agent of the assignor for that purpose, and his powers are limited by the scope of his official duties.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

Nos. 162, 163 January Term 1890, Sup. Ct.; court below, No. 5 March Term 1889, C. P.

To the number and term in the court below David Light, Jr., administrator d. b. n., c. t. a., of David Light, deceased, settled an account exhibiting a balance in his hands of $8,485.15. The account having been confirmed, the court appointed *Mr. J. G. Adams* auditor to make distribution of said balance among the persons legally entitled thereto. The auditor afterwards reported, finding in substance the following facts:

David Light, the decedent, died on February 26, 1873, leaving a will by which he directed that at the death of his wife his real and personal property should be sold and the proceeds thereof should be equally divided among all his children; further providing as follows: " And what I have given to any of my children in my lifetime, and charged the same in my book, shall be charged and deducted from their several and respective shares in the distribution of my estate."

Said will was duly admitted to probate on May 26, 1873, and letters testamentary thereon issued to two of the testator's sons, Levi and Israel Light, who were named therein as executors. In 1878 they were discharged on account of insolvency, and the accountant, who was also a son of the decedent, was appointed administrator, etc., in their stead.

At the time of his death the testator held the following notes against his son Levi:

Note dated August 8, 1867, at one day, $83.61.

Note dated April 15, 1868, at one day, $200.

Note dated April 1, 1870, at one year, $110.

He was also surety for Levi upon two notes; one dated December 3, 1870, at three months, for $300, in favor of Moses Light; and the other dated April 12, 1871, at one day, for $250, in favor of Catharine Hunsicker. After his death, judgments were confessed by his executors to the holders of the two notes last mentioned, for the amounts due thereon respectively, which

judgments were paid out of his estate, and satisfied upon the record April 24, 1880. Levi became insolvent and made an assignment for the benefit of creditors sometime in 1876. On the distribution of his assigned estate among his creditors, the notes above mentioned were presented as claims, and on March 28, 1881, the Court of Common Pleas confirmed the report of an auditor awarding dividends thereon.

Israel Light, another son of the testator, was indebted to him, at the time of his death, upon a note dated April 8, 1870, at 60 days, for $360, and the testator was also surety for Israel upon a note dated April 1, 1862, at one year, for $300, in favor of David Rauch. The testator's executors confessed judgment in 1878 to the holder of the latter note, for the balance due upon it, and on April 24, 1880, that judgment, having been paid out of his estate, was satisfied of record.

The interest of Levi Light in his father's estate was sold by his assignee for creditors to George Hoffman. Israel Light assigned his interest in said estate to George Hoffman, the First N. Bank and the Lebanon Trust and Safe Dep. Bank. These transferees appeared and asked the auditor to award the distributive shares of Levi and Israel to them as the assignees thereof.

The accountant put in evidence the notes and judgments above mentioned, and asked the auditor to charge against the respective shares of Levi and Israel the respective sums due upon notes in favor of the testator, and for payments made out of his estate, as aforesaid. The assignees of the shares thereupon pleaded the statute of limitations to the claims so proposed to be set off. The auditor did not report any finding or evidence that any indebtedness was charged by the testator, in his " book," against Levi and Israel, or either of them.

Upon the facts above stated, the auditor reported his opinion in part as follows :

The only legal question, therefore, that was presented for the determination of the auditor, was whether the notes held against Israel Light and Levi Light were barred by the statute of limitations. Upon a careful examination, your auditor came to the conclusion that the statute does not apply and the notes in question are not barred, and that Levi Light and

Israel Light cannot participate in the distribution of the estate, unless their respective distributive shares should be greater than their respective debts due the estate.

These claims were all valid claims at the time of the death of the testator ; but, it was contended by Mr. Killinger, who represented the assignees of the distributive shares of Levi Light and Israel Light, that the statute ran before the distribution of the estate, and therefore these debts cannot be set off against their respective shares. This question is directly decided in Thompson's App., 42 Pa. 345, that they can be set off, and that the executors can claim the legacy in whole or in part in satisfaction of the indebtedness.

Your auditor was in doubt whether the authority of Thompson's Appeal was not shaken by later decisions. Milne's App., 99 Pa. 483, cited by Mr. Killinger, decides that the debt of a distributee which was barred at the time of the death of the decedent cannot be set off as against such distributee's share in the estate. This is all that Milne's Appeal decides. It does not change the law as laid down in Thompson's Appeal, that a debt valid at the time of the death of the testator can be set off by the executor, in satisfaction of the indebtedness of the legatee.

Yorks' App., 110 Pa. 69, also cited by Mr. Killinger, is at present regarded as the controlling case on the question of the statute of limitations, as it overruled a number of cases which decided that the statute of limitations does not apply in the Orphans' Court. Upon an examination of Yorks' Appeal, we find that it deals exclusively with cases where the relation of debtor and creditor existed, and that it does not apply to cases pertaining to the distribution of decedent's estates among legatees, or next of kin, nor where the parties are in relation to each other as executors and legatees. Justice PAXSON, in his opinion on page 80, says : " I throw out of view the question of the character of the trust between the executor and next of kin and legatees. That question is not before us and will not be considered further than to remark that in those instances there is a trust pure and simple. No relation of debtor and creditor exists, or can exist in such cases. " By this remark it would seem that those cases, where the relation of executor and next of kin or legatee existed, were not intended

Auditor's Report.

to be affected by the ruling in Yorks' Appeal, and therefore the ruling in Thompson's Appeal stands unchanged and unaffected.

The indebtedness of Israel Light to the estate is found to be $1,688.39, and the indebtedness of Levi Light to the estate is found to be $1,676.08, which amounts are greater than their respective distributive shares would be.

—The auditor accordingly excluded the transferees of the distributive shares of Levi and Israel Light from the distribution reported by him.

To the report of the auditor, George Hoffman, et al., as assignees of the shares, excepted. After argument of the exceptions, the court, McPHERSON, J., filed an opinion holding that the language of the decision in Thompson's App., 42 Pa. 345, relied on by the auditor, was a dictum which ceased to be of authority after the decisions in Reed v. Marshall, 90 Pa. 349; Milne's App., 99 Pa. 490, and Yorks' App., 110 Pa. 77; that the statute of limitations was a good reply to the notes in favor of the testator, because the right of action arose in his lifetime, and the running of the statute was not suspended by his death; that, even if the fact that Levi was one of his father's executors, suspended the running of the statute as to the notes upon which he was liable, such suspension ceased upon his removal from said office in 1878; that it was unnecessary to decide whether the payment of dividends upon such notes, by Levi's assignee for creditors, would toll the statute, inasmuch as such payments were made more than eight years prior to the audit; and that, as to the payments made out of the estate of the testator upon the notes upon which he was surety, the right of action accrued, not to the testator but to his estate, either in 1878 or 1880: Wesley Church v. Moore, 10 Pa. 273; Ardesco Oil Co. v. Oil & M. Co., 66 Pa. 375; Smith v. Harry, 91 Pa. 119; Ward's App., 100 Pa. 289; Wood on Limitations, § 145; and the statute began to run at one or other of those dates, and had closed down upon the claims arising out of such payments. The auditor's report was thereupon recommitted, for a distribution in accordance with the opinion.

The auditor subsequently reported an amended distribution in which the shares of Levi and Israel were awarded to the assignees thereof, without any deduction on account of the

Arguments.

notes and demands above mentioned, and subsequently the court, McPHERSON, J., confirmed the amended report and decreed distribution in accordance therewith. Thereupon David Light, Jr., took these appeals, one relating to the distributive share of Levi, and the other to that of Israel, specifying that the court erred:

1. In not confirming the first report of the auditor.

2. In confirming the auditor's amended report.

5. In deciding that the notes and claims, held by the estate against Levi and Israel, were not advancements to be deducted from their legacies under the will.

6. In deciding that said notes and claims could not be set off against the legacies, because barred by the statute of limitations.

*Mr. John Benson*, for the appellant:

1. Were the notes given to the testator by his sons, which were not barred at the time of his death, subject to the bar of the statute of limitations at the time of the distribution? In the cases cited by the court below, either the statute had fully run before the death of the decedent, or else the controversies arose upon suits in the Common Pleas. None of them were like this case. It is now the law of Pennsylvania that when a debt due from a legatee to the testator matured more than six years before his death, it is barred, and the statute can be taken advantage of in the Orphans' Court; but, when the debt was not barred at the testator's death, a different rule prevails, and the debt can be applied to the payment of the legacy in part or in whole: Yorks' App., 110 Pa. 80. The date of the death fixes the rights of the debtor and of the legatee, who has in his hands assets of the estate sufficient to pay a part of his legacy: Thompson's App., 42 Pa. 357; Agnew v. Fetterman, 4 Pa. 56; Reed v. Marshall, 90 Pa. 349.

2. Is the demand for money, paid upon notes in which the testator was surety, barred? This is governed by the same principles as the question already discussed. It is true the right of action accrued only after the testator's death, but the debt was created and existed before. The legacy vested on the testator's death, and equity will apply the money so paid, as having been paid on account of the legacy, and will deduct it

therefrom. Moreover, as to the claims against Levi, the bar of the statute, if it applied thereto, was tolled by the distribution made in his assigned estate. That distribution was an adjudication of those claims: Reber's App., 125 Pa. 20. It was a decree of a court of competent jurisdiction, equivalent to a judgment recovered upon suit brought, and has the same effect as if recovered in an action at law upon those claims.

*Mr. C. H. Killinger* and *Mr. J. P. S. Gobin*, for the appellees:

1. This case cannot be distinguished from Yorks' App., 110 Pa. 69, as falling within the exception of a " trust pure and simple," therein referred to. To bring a case within that exception, the trust must exist as to the subject matter of the action: Thompson v. McGaw, 2 W. 161 ; App v. Dreisbach, 2 R. 287 ; Bell's Est., 25 Pa. 92. The relation between the legatee and the estate in this case, is that of debtor and creditor, and there is no trust involved in the determination of the controversy. The statute could have been pleaded in a common-law suit on these notes, and by reserving them for use as a set-off, the administrator cannot deprive the debtor of his right to plead it; for, when the jurisdiction is concurrent, the rule must be the same in either forum : Yorks' App., 110 Pa. 69; Keyser's App., 124 Pa. 80 ; Gilmore v. Reed, 76 Pa. 462. Besides, this case is ruled, in principle, by the two cases cited by the court below, Reed v. Marshall, 90 Pa. 345 ; Milne's App., 99 Pa. 483. The notes were overdue, and the statute had begun to run when the testator died. His death did not stay it: Amole's App., 115 Pa. 356.

2. As to the notes upon which the decedent was surety, certain additional considerations apply. The administrator was guilty of a devastavit in applying funds of the estate to the payment of those notes, which were barred as against the estate when he paid them. He could neither re-assume the barred liability for the estate: Reber's App., 125 Pa. 20 ; nor could he bind the estate by recognizing them as subsisting claims: Hoch's App., 21 Pa. 280. Had suit been brought against the estate, the appellees could have pleaded the statute, although the administrator did not: See cases cited in Yorks' App., supra. When brought into this distribution, they are open to

the same objections from us, as this is the first opportunity we have had to plead the statute.     While the allowance of a claim in an Orphans' Court distribution will toll the bar of the statute: Reber's App., 125 Pa. 20; the rule is otherwise as to a distribution in the Common Pleas of an assigned estate: Burrill on Assignments, § 446; Roosevelt v. Mark, 6 Johns. Ch. 266; Pickett v. Leonard, 34 N. Y. 175; Pickett v. King, 34 Barb. 193; Marenthal v. Moster, 16 Ohio 566; Stoddard v. Doane, 7 Gray 387; Bunn v. Drovin, 2 Phila. 306.     But more than six years have elapsed since the dividend out of the assigned estate of Levi was paid.

## NO. 162.

OPINION, MR. JUSTICE CLARK:

David Light died February 26, 1873, leaving to survive him a widow and seven children.  By his last will and testament, he directed that after the death of his widow all his real and personal property should be sold, and that the proceeds thereof, with the money on hand, should be equally divided amongst his children.  After the widow's death, this provision of his will was complied with, and the account of the administrator, d. b. n., c. t. a., shows a balance in his hands of $8,485.15, and this is the fund for distribution.  By his will, the decedent provided as follows: "And what I have given to any of my children in my lifetime, and charged the same in my book, shall be deducted from their several and respective shares in the distribution of my estate."

The testator held three notes against his oldest son, Levi Light: one dated August 8, 1867, payable one day after date, for $83.61; one dated April 15, 1868, payable one day after date, for $200; and one dated April 1, 1870, payable one year after date, for $110.  The testator was bail for Levi on two other promissory notes: one to Moses Light, dated December 3, 1870, payable three months after date, for $300; the other to Catherine Hunsicker, dated April 12, 1871, payable in one year, for $250.  The interest on these two notes was paid by Levi up to the year 1876.  In that year, Levi Light became insolvent, and the assignee for creditors, in the course of the settlement of his trust, sold and transferred the interest of Levi in his father's estate to George Hoffman et al., the appellees.  The

estate of David Light, the testator, having been obliged to pay the notes upon which David Light was bail, the whole five notes were presented in the distribution of the assigned estate in 1881, and were allowed a dividend.

The testator, at the time of his death, held a promissory note dated April 8, 1870, payable in sixty days, for $360, against his son Israel, who also assigned his interest in his father's estate to George Hoffman et al., the appellees.

At the distribution of the fund of $8,485.15, in the hands of the administrator of David Light, deceased, all the notes mentioned, not only those of Levi Light, but also the note of Israel Light, were laid before the auditor by the appellants as a set-off against the legacies of Levi and Israel respectively, or as charges, in the nature of advancements, upon their respective shares in the estate. The appellees resisted this, upon the ground that there was no evidence whatever that the sum specified in any of the notes was ever intended or treated as an advancement, and that, as a set-off, the notes were all barred by the statute of limitations.

The notes were not barred at the death of David Light, deceased, and it is argued, upon the authority of Thompson's App., 42 Pa. 345, that: " When a legatee comes into the Orphans' Court, which is a court of equity, to demand his legacy, he is obliged to do equity by applying his debt in payment of it; " that, so long as the debt remains undischarged, the assignees, in right of the legatee, will not be entitled to receive the legacy. Thompson's App., supra, was, without doubt, rightly decided on other grounds. The testator, in that case, by his last will declared his intention to advance to each of his daughters a sum on her marriage, to be deducted from her share, and did so charge each daughter on his family book with the sums advanced, as also his son with the amount of the note in question, paid for him, charging it just as he had charged his daughters with what they had received, respectively. The note, under the facts of that case, was therefore properly considered an advancement, and no question upon the statute of limitations could arise. The reasoning of Thompson's Appeal, as respects the statute of limitations, is, at best, obiter dictum, and is based upon McClintock's App., 29 Pa. 360, which is referred to by the learned judge, delivering the opinion,

to establish the proposition that the date of the death of the
testator fixed the relations of the parties; and also upon the
English case of Courtenay v. Williams, 3 Hare 539.    But
McClintock's Appeal was expressly overruled in Yorks' App.,
110 Pa. 69, and Courtenay v. Williams, as stated in Reed v.
Marshall, 90 Pa. 349, is not in accord with the current of de-
cisions under our statute of limitations.    In Milne's App., 99
Pa. 483, it was held, in direct denial of the doctrine of Court-
enay v. Williams, that, in the distribution of a decedent's es-
tate in the Orphans' Court, the indebtedness of a distributee
to the decedent, against which the statute of limitations had
run at the time of the decedent's death, could not be set off
against his share.    See also Drysdale's App., 14 Pa. 531.    The
effect of McClintock's Appeal was to extend the rule applica-
ble in cases of pure trusts, and enforceable in equity only, to
distributions in the Orphans' Court.    The doctrine of that case,
however, had no application in personal actions at law against
executors: Mitcheltree v. Veach, 31 Pa. 455; nor to a set-off
in an action in the Common Pleas for a legacy: Reed v. Mar-
shall, supra.    Since the decision in Yorks' Appeal, however,
these distinctions do not exist; the plea of the statute is as
available in a distribution in the Orphans' Court as in actions
at law in the Common Pleas.

"The relation which subsists between a creditor and the es-
tate of his deceased debtor," said Mr. Justice PAXSON, in
Yorks' App., supra, "is that of debtor and creditor, with a trust
superadded, by means of which, and the machinery of the Or-
phans' Court, he can demand his proportion of the trust fund
after his claim has been established.    When so established, it
may be said to be seated on the trust, and there is some room
for the application of the principle of McClintock's Appeal.
But in attempting to establish it, the creditor is pursuing the
estate of the decedent as his debtor; no other relation exists
but that of debtor and creditor, and the statute of limitations
may be set up in any forum which has jurisdiction of the
case . . . . . The fact that the creditor could sue at law and
that the statute could be pleaded in such proceeding, is an an-
swer to the assertion that there is a trust exclusively cogniza-
ble in equity.    The right to plead it in one court and not in the
other is, as before observed, an anomaly.    I know of nothing

to sustain it, and there is an overwhelming weight of authority against it." The same reasoning applies in this case. There was no evidence whatever that the notes represented sums received by way of advancement: the parties to these notes occupied the relation of debtor and creditor, and the ordinary and appropriate remedy upon the notes was in the Common Pleas; and, if the appellant's contention is sustained, we have again the anomaly of the right of a party, upon the same debt to plead the statute of limitations in one court, and not in the other. The general and well-settled rule, as stated by the learned judge below, is that, when the statute begins to run, it will not stop because of the death of either party: Mitcheltree v. Veach, supra; Marsteller v. Marsteller, 93 Pa. 350; Amole's App., 115 Pa. 356; Updegrove v. Blum, 117 Pa. 259; and, since the decision of Yorks' App., supra, this is a rule of general application. If the statute can be pleaded with effect when the decedent's estate is a debtor, we can see no good reason why it may not be pleaded also with like effect when the estate is a creditor: if the running of the statute should be stopped by the death in one case, why not in the other? There is no necessity arising out of the administration of the law, or the practice in equity, which calls for any such distinction; the legatees were as much entitled to the protection of the statute as any other creditor. Admitting the right of an executor, or of the heirs, in the distribution of a decedent's estate, to set off the debts of the legatees against their legacies, the debts, to constitute a valid set-off, should be valid, subsisting debts, not barred by the statute. If suits had been brought upon these notes before the bar of the statute, the validity of the debts evidenced thereby might have been established and their obligation continued; and, when so established, the executor's right to a set-off is inherent to the trust, and cannot be denied.

Nor do we think the allowance of a dividend out of the assigned estate of Levi Light, and payment thereof by the assignee, tolled the statute, either as an implied promise to pay or as an adjudication of the debt. The allowance and payment of the dividend was not the act of Levi Light, or of his agent, duly authorized. The assignee was not under the personal direction or control of the assignor: his duties were defined by law, and he could do nothing to bind the assignor, outside of

the scope of his duty. No new promise of the assignor could be implied from the act of the assignee, who acted for himself, only, in the discharge of official duty. But the further discussion of this question seems useless, as the dividend was paid in April, 1881, eight years and more before the hearing by the auditor. Upon similar ground, the adjudication by the auditor cannot be accepted as an adjudication of the claim excepting as to the assigned estate. In a distribution in the Orphans' Court, as in Reber's App., 125 Pa. 20, the adjudication is against the administrator or executor as the legal representative of the decedent; whilst, in the case of a distribution of an assigned estate, the adjudication is against a particular fund only.

We are of opinion that the learned judge of the court below was right in confirming the amended report.

> The decree of the Orphans' Court is therefore affirmed, and the appeal dismissed at the cost of the appellant.

NO. 163.

OPINION, MR. JUSTICE CLARK:

For reasons stated in our opinion, in David Light's Appeal, No. 162 January Term 1890,

> The decree of the Orphans' Court is affirmed, and the appeal is dismissed at the cost of the appellant.