## WILSON v. SMITH.

## WILSON v. SMITH.

### (Circuit Court. E. D. Pennsylvania. August 21, 1902.)

#### No. 44.

1 LEGACIES—ADEMPTION.

A gift made subsequent to the date of a will is to be taken as an ademption of a legacy there bestowed only when the testator stands in loco parentis. A legacy of $4,000 to a nephew is therefore not adeemed by the testator subsequently loaning him $5,000, which he ultimately turned into a gift.

2. SET-OFF—CLAIM BARRED BY LIMITATIONS—FOLLOWING STATE DECISIONS.

In a proceeding begun in a state court to recover a legacy by a remedy given by the state statute, it will be held by the federal court to which it has been removed, in conformity to the decisions of the state courts, that a claim barred by the statute of limitations cannot be set off against such legacy.

3. DISCONTINUANCE—RETRAXIT.

A discontinuance is not a retraxit barring another action, though counsel had agreed to the facts, and submitted them to the court for its opinion as on a special verdict.

4. RES JUDICATA.

A judgment of the orphans' court dismissing a petition for an account, the object of which is to produce a fund out of which a legacy can be realized, is conclusive against him in a proceeding to recover the legacy begun in the common pleas having concurrent jurisdiction.

5. LACHES.

A proceeding in the nature of a bill to collect a legacy will be dismissed for laches, nothing having been done for over nine years after the refusal of the executor to pay it, and the estate having in the meantime been distributed, though the legatee, immediately on refusal of the executor, placed the claim in the hands of an attorney for action.

Hearing on Bill, Answer, and Proof.

For former opinion, see 66 Fed. 81.

Thomas Cahall and Charles C. Lister, for complainant.

R. L. Ashhurst and Benjamin Nields, for defendant.

ARCHBALD, District Judge.[1] As originally brought in the common pleas of Philadelphia, this was an action to recover a legacy according to the provisions of the state law (Act Feb. 24, 1834, §§ 50–56, P. L. 1833–34, pp. 83, 84); but, having been removed into this court because of the diverse citizenship of the parties, it was transferred to the equity side, on the ground that it was the substitute for a bill, and must, therefore, be proceeded with in that character (Seibert v. Butz, 9 Watts, 490). The decedent, Samuel Harlan, Jr., departed this life February 6, 1883, having made a will, in which he gave a legacy of $4,000 to the plaintiff, his nephew, the son of a deceased sister. This will was duly probated at Wilmington, Del., where the testator had his domicile, on February 9, 1883, and letters testamentary were subsequently issued. The estate of the decedent was a large one, amounting to $800,000, of which $100,000, consisting of real and personal property, was located in Pennsylvania, where ancillary letters were taken

¶ 2. State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

See Courts, vol. 13, Cent. Dig. § 983; Executors and Administrators, vol. 22, Cent. Dig. § 1173.

[1] Specially assigned.

out on May 28th following. Because of the existence of these assets, and for the purpose of reaching them, the present suit was instituted. A number of defenses are made to it, which I will consider and dispose of in their order.

1. In the first place, it is claimed that the legacy was adeemed. The will is dated July 6, 1865, and on February 13, 1866, the testator loaned to the plaintiff $5,000 to assist him in business, taking his promissory note, payable three years after date, with interest semiannually; and to secure the loan the plaintiff had his life insured for $10,000 in his uncle's favor. Two installments of interest were paid,—one on August 1, 1866, and the other February 13, 1867,—but that was all that the plaintiff was ever able to do about it. He was unsuccessful in business, and failed several times, and, when the second premium on the insurance policy came due, Mr. Hanlan, being appealed to to carry it for his own benefit, declined to do so, declaring that the $5,000 was lost, and that he would put nothing more into the matter. So far as the note was concerned, he said he would destroy it, and subsequently informed the plaintiff that he had, and up to the time of his death no further demand was made upon it. This evidence, which was given by the plaintiff, is objected to on the ground that he was incompetent to testify to anything which occurred in the lifetime of the testator; but, inquiry having been made of him on cross-examination with regard to what had become of the insurance policy, it opened the door, as it seems to me, for evidence with regard to the whole transaction. But whether this testimony be received or not, I cannot see that the legacy has been adeemed. A gift made subsequent to the date of a will is to be taken as an ademption of a legacy therein bestowed only when the testator stands in loco parentis to the legatee. 1 Am. & Eng. Enc. Law (2d Ed.) pp. 613, 623; Gill's Estate, 1 Pars. Eq. Cas. 139. Where that relation does not exist, there is no occasion to apply the rule, which is founded on the idea that a legacy to a child is in the nature of a parental provision or portion, which the subsequent gift or advancement to that extent anticipates and supplies. Ex parte Pye, 18 Vesey, 140; Miner v. Atherton's Ex'r, 35 Pa. 528. It is a matter of presumed intention, which the relationship supplies, but which does not exist in the case of a stranger, although extrinsic facts may be always resorted to to sustain or rebut it. 1 Am. & Eng. Enc. Law (2d Ed.) p. 620; Zeiter v. Zeiter, 4 Watts, 212, 28 Am. Dec. 698; In re Ritter's Estate, 10 Pa. Super. Ct. 352. It has also been held that, where the will is confirmed by a subsequent codicil, the legacy is not to be considered as adeemed by an intervening gift (Chapman v. Allen, 56 Conn. 152, 14 Atl. 780); and that doctrine is appealed to here. But a contrary view prevails in Pennsylvania (Alsop's Appeal, 9 Pa. 374; Garrett's Appeal, 15 Pa. 212), and I shall not undertake to decide which should be followed, nor what is the true construction to be given to the codicil relied upon, about which there is some controversy. It is sufficient that the intent to adeem the legacy in the present instance is not to be presumed under all circumstances.

2. It is further contended that the executor has a right to set off the debt to the legacy, or at least to retain the one in satisfaction of

the other. This is met by the counter suggestion that the debt, being barred by the statute, cannot be so used. In support of the one position it is argued that the statute merely bars the remedy, and does·not operate upon the debt itself, which still remains a subsisting moral and equitable, if not legal, obligation. This is the view taken by the English courts, where the right of retainer or set-off is fully sustained. Courtenay v. Williams, 3 Hare, 539; Coates v. Coates, 33 Beav. 249; In re Cordwell's Estate, L. R. 20 Eq. 644. It also seems to be the accepted doctrine in some parts of this country. In re Bogart, 28 Hun, 466; Garrett v.. Pierson, 29 Iowa, 304; Tinkham v. Smith, 56 Vt. 187; Holmes v. McPheeters, 149 Ind. 587, 49 N. E. 452. Says Jordan, J., in the latter case:

"The right is not one of set-off, but is founded on the principle that the administrator or executor has an equitable lien on the share of the distributee or legatee until the latter has discharged the obligation which he owes to the estate."

But in other courts of equal authority the bar of the statute is upheld. Allen v. Edwards, 136 Mass. 138; Holt v. Libby, 80 Me. 329, 14 Atl. 201; Drysdale's Appeal, 14 Pa. 531; Reed v. Marshall, 90 Pa. 345; Milne's Appeal, 99 Pa. 483; In re Light's Estate, 136 Pa. 211, 20 Atl. 536, 537. Where this view prevails, a legacy or distributive share is regarded as a legal demand, and the debt of the legatee or distributee to the estate as a set-off or counterclaim to be dealt with the same as any other. Says Sterrett, J., in Reed v. Marshall, just cited:

"If the defendants [executors] had brought suit on the notes, it is very clear that, without proof of a new promise within six years, the statute could have been successfully interposed as a bar to their recovery; and it is difficult to see how they are in any better position when they endeavor to avail themselves of the notes as a set-off or cross-demand."

A somewhat broader view is expressed by Gordon, J., in Milne's Appeal, supra, where he says:

"It is true that the statute operates only upon the remedy or action for the collection of the debt; but it thus operates because of the presumption that the claim has been paid, or otherwise extinguished, if its collection has not been insisted upon in six years, and that, therefore, it would be inequitable after that time to compel its payment."

It is not necessary, however, to decide which of these conflicting sets of authorities is the better sustained by reason, or which should be adopted and followed by this court if called upon to make up an independent judgment of its own. This is a proceeding—as it is to be remembered—originally begun in the state court to enforce a remedy given by the statute law of the state. By its removal into this court it may have lost some of its characteristics, but not its essential ones; nor is this affected by its transfer to the equity side, which was done in fact for the purpose of the better maintaining them. The law must, therefore, be administered as nearly as possible as it would have been had the case remained where it was begun; and, the statute of limitations of the state having been invoked, it is to be applied in conformity. to the decisions of the state courts. As said by Mr. Justice Clifford in Hanger v. Abbott, 6 Wall. 532, 18 L. Ed. 939:

"Proceedings in courts of justice are usually determined by the lex fori of the place where the suit is pending, including the statutes of limitation, which are those of the country where the suit is brought, and not those of the lex loci contractus."

Or as it is well put by Gray, J., in McClain v. Life Association, 49 C. C. A. 31, 110 Fed. 80:

"In extending the judicial power of the United States to controversies between citizens of different states, the only purpose indicated by the constitution was to provide another forum than that of the state; not another law than that of the state."

It matters not, therefore, in the present instance, what the law may be in other jurisdictions, including the state of Delaware, where the testator had his domicile; nor whether, by reason of the continued absence of the plaintiff from that state, the debt which he owed the testator is relieved from the ordinary bar. It is not the statute of limitations of Delaware that I am called upon to administer, but that of Pennsylvania; and, according to the repeated decisions of that state, already referred to, it may be successfully invoked in a case of this kind. The debt, therefore, which is attempted to be set up by the defendant, having long since become outlawed, cannot be used to prevent a recovery by the plaintiff, if he is otherwise entitled to it.

3. In July, 1893, an action of assumpsit was brought by the plaintiff in the superior court of Delaware to recover his legacy, and, a declaration having been filed, pleas were entered, and the case put at issue. On May 22, 1894, a case stated was agreed to by counsel, and was set down for a hearing a few days later; but two days before it was to come up a discontinuance was entered. This, it is claimed, was a retraxit, which bars another action. The argument seems to be that, having agreed to the facts, and submitted them to the court for its opinion as upon a special verdict, the plaintiff could not withdraw the submission by a discontinuance, or, if he did, being his own voluntary action, it must be taken as an admission that he had no case. No authority is produced for this position, and I can find none. A special verdict does not prevent a nonsuit (Washburn v. Allen, 77 Me. 344); nor a discontinuance (Price v. Parker, 1 Salk. 178); and a case stated is a mere substitute, from which the party may recede in the same way. To do so by nonsuit or discontinuance, which is merely an abandonment of that particular action, cannot be wrested into an acknowledgment of record, as in a retraxit that the party entirely gives up his case. Minor v. Bank, 1 Pet. 46, 7 L. Ed. 47; U. S. v. Parker, 120 U. S. 89, 7 Sup. Ct. 454, 30 L. Ed. 601; Lowry v. McMillan, 8 Pa. 157, 49 Am. Dec. 501. This admittedly would not be the effect without the case stated, and it is difficult to see how the mere fact that one has been entered into can give it any such significance.

4. On June 2, 1894, immediately after the suit in Delaware had been withdrawn, the plaintiff presented a petition to the orphans' court of Philadelphia, setting forth his legacy, the existence of assets in this state, his own residence here, and the fact that ancillary letters had been issued to the executor named in the will, and praying that the

latter might be cited to an account. The executor appeared and answered, and, upon a hearing being had, the petition was dismissed. In re Harlan's Estate, 3 Pa. Dist. R. 809. The ground of this action, as I gather from the opinion, was substantially as follows: Notwithstanding that the executor, because of the debt which the plaintiff owed the estate, had refused to pay the legacy when it was demanded by the plaintiff in 1884, no move was made to question this refusal until the suit in Delaware, some nine years later, in July, 1893; and as the executor, acting upon the plaintiff's apparent acquiescence, had meanwhile converted the Pennsylvania assets, and carried them into his general accounts at the place of his appointment, there was no occasion to compel him to make another accounting here. The result so reached was strengthened by the consideration that the court, in the exercise of the discretion committed to it in view of the peculiar controversy between the parties, would, in all probability, even if an account were ordered, have remitted to the court of the domicile for disposition whatever fund was produced from the assets here. The plaintiff is clearly concluded by this disposition of his case. Under the statute law of Pennsylvania, the orphans' court, to which he applied, had jurisdiction concurrently with the common pleas, to which he now resorts (In re Dundas' Appeal, 73 Pa. 474), and the same circumstances and considerations would control in each. If he had applied a second time to the orphans' court, he would have had to face the former adjudication, and why should it not operate against him here? The facts are necessarily the same; and, even if they were different, the plaintiff was bound to present his whole case at that time as well as now, and is concluded as much with regard to what he might have shown as what he really did. Cromwell v. Sac Co., 94 U. S. 357, 24 L. Ed. 195; Raisig v. Graf, 17 Pa. Super. Ct. 509. It is suggested, however, that the petition in the orphans' court was merely for an account, in which the merits were not involved; but this loses sight of the real nature of the application. The whole purpose of obtaining an account was to produce a fund out of which the legacy could be realized. It was the first step in the process which had that for its end, and, when it was decided that the plaintiff was not entitled to call for an account, the whole controversy was virtually disposed of.

5. But aside from the decision so rendered, and considering the matter as though it were now anew presented, it seems to me that the plaintiff must fail on the ground of laches, pretty much as the orphans' court held. If the suit, as originally instituted in the state court, is to be regarded as a substitute for a bill,—which would be much more the case now that it has assumed that specific character in this court,—the question is whether a chancellor, under all the circumstances, would grant the relief asked. Dunlop v. Bard, 2 Pen. & W. 307. It is clear that he would not. Without going over the facts which are to be found in this record, it is sufficient to note that, as pointed out by the orphans' court, from the time the plaintiff demanded his legacy and was refused, in 1884, he did nothing for over nine years to show that he did not acquiesce in the position taken by the executor, and in the meantime the whole estate was

converted, accounted for, and distributed.   Conceding that, when once started, the plaintiff has pursued with reasonable diligence the various legal steps to which he has been advised by counsel, and that, following one upon the other, as they do, they are to be taken as a sufficient continuous assertion of his claim, the fact, nevertheless, remains that no beginning was made for over ten years after the testator's death, and nine years after the executor had accounted for the great bulk of the estate, nor until seven years after the final disposition of the property in this state which had been specifically devised.   The settling up of an estate cannot be so delayed at the will of those who have claims against it.   The executor was bound to go on, and close up this one as he did, and it is altogether too late to expect to reopen it now.   It is stated that, at once on the executor's refusing to pay, the claim was put in the hands of reputable counsel in Delaware for action, and that report was had from time to time from there that progress was being made, and that when, at last, it was found that nothing had been done, new counsel was employed. But that does not change or relieve the situation.   The plaintiff is chargeable with the neglect of his counsel just as much as if it was his own.   It is still the fact that, however brought about, there was this long lapse of time without any action taken, and that nothing has been shown to excuse it, however it may have been explained.

Let a decree be drawn dismissing the bill, with costs.